```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
ACA GALLERIES, INC.,

                Plaintiff,              OPINION AND ORDER

        -against-
                                        09 Civ. 6649 (MGC)

JOSEPH A. KINNEY,

                Defendant.

----------------------------------X

APPEARANCES:

        FLOWER, MEDALIE & MARKOWITZ
        Attorneys for Plaintiff
        24 East Main Street
        Bay Shore, New York 11706

        By:  Edward Flower, Esq.


        JOSEPH A. KINNEY
        Defendant pro se
        25 Bridle Path Circle
        Pinehurst, North Carolina 28374
```

**Cedarbaum, J.**

ACA Galleries, Inc. ("ACA"), a New York corporation, sues Joseph Kinney, a citizen of North Carolina, for selling it a forged Milton Avery painting. The complaint contains three claims. Although count one alleges breach of contract, ACA's papers in support of its motion for summary judgment disclose that ACA is really seeking rescission of the contract under the doctrine of mutual mistake. Counts two and three allege fraudulent conduct by Kinney. ACA seeks to recover the $200,000 that it paid for the painting, plus attorney's fees and punitive damages. ACA has now moved for summary judgment only on its contract claim. Kinney has moved for summary judgment on all of ACA's claims. For the reasons that follow, ACA's motion is denied, and Kinney's motion is granted.

## FACTS

The following facts are undisputed. In March of 2007, Kinney contacted ACA via email and informed it that he was selling a Milton Avery oil painting, entitled "Summer Table, Gloucester." After some negotiation, Kinney shipped the painting from North Carolina to a warehouse in New York to exhibit the work and allow ACA, and any other prospective buyer, to inspect it. Jeffrey Bergen, the president and chief operating officer of ACA, did inspect the painting and determined it was a genuine Milton Avery work. The parties

2

agreed on a purchase price of $200,000.  The bill of sale describes the painting as "Milton Avery Oil on Canvas."

Shortly after ACA wired the purchase price to Kinney and Kinney released the painting to ACA, ACA had the painting examined by the Milton and Sally Avery Arts Foundation (the "Avery Foundation").  The Avery Foundation determined that the painting was not authentic.  Bergen informed Kinney of this determination and demanded return of the purchase price.  Kinney initially promised that he would refund ACA's money, but never did.

## DISCUSSION

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists when the evidence is such that a reasonable finder of fact could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  In deciding whether a genuine dispute exists, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

**I.   Contract Claim**

ACA argues that it is entitled to rescission of the contract under the doctrine of mutual mistake, namely that both parties were mistaken as to the authenticity of the painting. There are disputed issues of fact regarding Kinney's knowledge of the Avery painting's authenticity, but in order to pursue rescission by mutual mistake, ACA states that it assumes Kinney was unaware that the painting was inauthentic.  Whether or not an issue of fact exists with respect to Kinney's knowledge, summary judgment must be granted for Kinney and against ACA on the contract claim because the doctrine of mutual mistake cannot be invoked by ACA to avoid the consequences of its negligent behavior in failing to authenticate the painting, a risk that ACA bore.

A mutual mistake under New York law[1] means that both parties "shared the same erroneous belief as to a material fact, and their acts did not in fact accomplish their mutual intent." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 46 (2d Cir. 1991) (citing Rekis v. Lake Minnewaska Mountain Houses, Inc.,

---

[1] Since both parties cite exclusively to New York and federal case law, application of New York law is grounded in the parties' implied consent. Motorola Credit Corp. v. Uzan, 388 F.3d 39, 61 (2d Cir. 2004) ("[T]he parties' briefs assume that New York law controls this issue, and such 'implied consent . . . is sufficient to establish choice of law.'" (quoting Krumme v. WestPoint Stevens, Inc., 238 F.3d 133, 138 (2d Cir. 2000))).

170 A.D.2d 124, 129 (3d Dep't 1991); <u>Turner v. Mut. Benefit Health & Accident Ass'n</u>, 160 N.Y.S.2d 883, 890-91 (N.Y. Sup. Ct. 1957); 21 N.Y. Jur. 2d <u>Contracts</u> § 121, at 528 (1982)).  In order to obtain rescission based on mutual mistake, ACA must show "that the mistake in question is mutual, substantial, material and exists at the time the contract is entered." <u>Rodriguez v. Mower</u>, 56 A.D.3d 857, 858 (3d Dep't 2008).

However, the doctrine of mutual mistake "may not be invoked by a party to avoid the consequences of its own negligence." <u>P.K. Dev., Inc. v. Elvem Dev. Corp.</u>, 226 A.D.2d 200, 201 (1st Dep't 1996).  Mutual mistake is further limited if the party wishing to invoke the doctrine bears the risk of the mistake because he was aware of his limited knowledge but acted anyway. Under § 154 of the Restatement (Second) of Contracts, a party bears the risk of a mistake when "he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient."  <u>Koam Produce, Inc. v. DiMare Homestead, Inc.</u>, 329 F.3d 123, 127-28 (2d Cir. 2003) (quoting Restatement (Second) of Contracts § 154 (1981)).  "Contract avoidance on the grounds of mutual mistake is not permitted just because one party is disappointed in the hope that the facts accord with his wishes."  <u>In re Schenck Tours, Inc.</u>, 69 B.R. 906, 914 (Bankr. E.D.N.Y. 1987) (citing <u>Backus v. MacLaury</u>, 278

5

A.D. 504 (4th Dep't 1951)), aff'd, 75 B.R. 249 (E.D.N.Y. 1987). In such situations, it is sometimes said that in a sense there is no mistake at all, but rather "conscious ignorance." Restatement (Second) of Contracts § 154 cmt. c (1981).

Courts have found that the failure to investigate constitutes negligence sufficient to bar the application of the mutual mistake doctrine. For example, in P.K. Development, the First Department denied rescission based on mutual mistake where the corporate seller of a residential cooperative unit failed to investigate its own property before sale and thus failed to discover that the unit had been unoccupied, which made it more valuable. 226 A.D.2d at 201-02. The uniqueness of the subject of the transaction is considered when assessing the risk a party bears. For example, when a civil engineering company turned out not to have the earning potential that it had been presumed to have before the defendant agreed to purchase it, the Second Circuit found no mutual mistake. See Leasco Corp. v. Taussig, 473 F.2d 777, 781 (2d Cir. 1972). The court reasoned that a civil engineering business is "personalized, highly technical, and extremely risky" and that "neither party could safely assume that the projected earnings would be realized." Id.

It is undisputed that Kinney gave ACA access to the painting at a New York City storage facility before the purchase. It is also undisputed that Bergen inspected the

6

painting and believed it to be authentic, but ACA waited until after the purchase to have the painting examined by the Avery Foundation.  ACA's failure to take advantage of its opportunity to consult the Avery Foundation before buying the painting precludes it from claiming mutual mistake.

## II.  Fraud Claims

Although ACA moves for summary judgment only on its contract claim, Kinney moves for summary judgment dismissing all of ACA's claims, including those sounding in fraud.  There are fiercely disputed issues of fact as to whether Kinney knew that the Avery painting was a forgery.  However, Kinney's motion for summary judgment on ACA's fraud claims must be granted because, as a matter of New York law, ACA's reliance on any representations made by Kinney was unreasonable and thus ACA's fraud claims fail.  Even if a genuine dispute of fact exists regarding some fraud elements, plaintiff cannot establish reasonable reliance on the authenticity of the painting.  Reasonable reliance is an essential element of fraud.  Stuart Silver Assocs., Inc. v. Baco Dev. Corp., 245 A.D.2d 96, 99 (1st Dep't 1997).

Fraud under New York law requires "(1) defendant's knowing misrepresentation of a material fact, (2) made with intent to deceive, (3) plaintiff's reasonable reliance, and (4) damages." Perrin & Nissen Ltd. v. SAS Group Inc., No. 06 Civ. 13089 (MGC),

7

2009 WL 855693, at *6 (S.D.N.Y. Mar. 27, 2009) (citing Channel Master Corp. v. Aluminum Ltd. Sales, Inc., 4 N.Y.2d 403, 406 (1958)); see also Eurycleia Partners, LP v. Seward & Kissel, LLP, 12 N.Y.3d 553, 559 (2009).[2]

The oft-quoted definition of reasonable or justifiable reliance is that "if the facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations." Danann Realty Corp. v. Harris, 5 N.Y.2d 317, 322 (1959) (internal quotations omitted). As a matter of law, "a sophisticated plaintiff cannot establish that it entered into an arm's length transaction in justifiable reliance on alleged misrepresentations if that plaintiff failed to make use of the means of verification that were available to it." HSH Nordbank AG v. UBS AG, 95 A.D.3d 185, 194-95 (1st Dep't 2012) (internal quotations omitted).

ACA cannot establish justifiable reliance because it had the opportunity to fully investigate the authenticity of the painting but failed to do so. Although Bergen's sworn affidavit

---

[2] To the extent ACA's claims are based on fraudulent inducement, New York law is the same. See Ventur Group, LLC v. Finnerty, 68 A.D.3d 638, 639 (1st Dep't 2009).

states that Kinney advised him that the painting could not be removed from storage before purchase, there is no allegation or evidence that Kinney did not permit inspection by the Avery Foundation, or any other expert, at the warehouse.  Kinney has submitted a copy of an email from an employee at the Avery Foundation sent to him on April 3, 2007 -- the day before ACA was sent a proposed bill of sale for the painting -- confirming that Sean Avery Cavanaugh, vice president of the Avery Foundation, was available to see the painting for authentication.  ACA argues that this email indicates Kinney had concerns about the painting's authenticity.  But summary judgment can nonetheless be granted because ACA's reliance was not justifiable.  It remains undisputed that ACA itself did not have the painting authenticated prior to purchase, while the email submitted by Kinney indicates that doing so would have been feasible.

That ACA failed to avail itself of the opportunity to have the painting inspected by the Avery Foundation or another expert prior to purchase, and instead relied only on Bergen's inspection, was not reasonable.  ACA is in the business of buying and selling art.  Such a business must be cognizant of forgery of the works of well-known artists like Avery.

Courts have found that failure to investigate bars a finding of reasonable reliance.  For example, in Stuart Silver,

9

plaintiffs with real estate investment experience invested in a condominium project that ultimately failed. 245 A.D.2d at 96-97. They alleged fraud based on misrepresentations in the offering materials and oral promises that they would double their investment and receive a guaranteed return. Id. at 98. The court held that whether or not the promises had been made, plaintiffs were "relatively sophisticated investors who should have understood the risks of investing in a real estate venture" without conducting their own due diligence investigation or consulting lawyers and accountants. Id. at 99. It was unreasonable, the court found, to rely on the alleged oral promises by defendants without conducting further investigation. The plaintiffs never visited the site, investigated defendant's investment history, or requested supporting documentation for financial projections. Id. at 97, 99.

Even if some level of investigation is done, a failure to investigate fully can bar a finding of reasonable reliance. For example, in Peach Parking Corp. v. 346 W. 40th St., LLC, Hertz Corp., and Kinney System Inc., Hertz, a car rental company, was aware of potential structural issues in a parking lot but did not undertake a detailed study; instead, it retained an architectural firm to perform only a "cursory observation" of the property. 42 A.D.3d 82, 84-85 (1st Dep't 2007). The court refused to allow Hertz to amend its pleadings to add fraud

10

claims because Hertz had not justifiably relied on any promises about the building's condition; rather, Hertz declined to have structural engineers inspect the property when, had it undergone this "more rigorous inspection, it would have discovered the full extent of the problems."  Id. at 87.

When an art gallery has access to information regarding a painting's authenticity, but fails to pursue the information, it cannot reasonably rely on defendant's representations or omissions regarding the painting.  In a federal case applying New York law, plaintiff's fraud claim was dismissed because, inter alia, the allegations failed to establish that the plaintiff had justifiably relied on defendant Sotheby's representation that a painting, later found to be inauthentic, would be accompanied at sale by a letter from an expert "discussing" the painting.  Foxley v. Sotheby's Inc., 893 F. Supp. 1224, 1229 (S.D.N.Y. 1995).  The court held that plaintiff's access -- his ability to request the letter himself and see what it said about the painting's authenticity -- negated justifiable reliance.  Id.  Although the plaintiff alleged that he lacked sophistication and familiarity with the particular artistic style of the painting, the court reasoned that plaintiff was "a sophisticated purchaser of art at auction. He certainly knew how to demand a letter described in an auction catalog," as he successfully did several years after he had

already purchased the painting.  Id.  It was only then, years later, that plaintiff discovered that the expert's letter was based not on the original art but instead on a photograph of the piece, and thus the expert's letter did not properly authenticate his purchase.  The letter's contents were "readily available," and thus neither Sotheby's failure to deliver the letter nor Sotheby's representations about the letter itself could be actionable.  Id.

The very fact that ACA felt the need to seek authentication by the Avery Foundation after the purchase indicates that it knew how to do so prior to the purchase.  ACA's decision to wait is not protected under New York law.

## CONCLUSION

For the foregoing reasons, ACA's motion for partial summary judgment is denied.  Kinney's motion for summary judgment dismissing all of ACA's claims is granted.

SO ORDERED.

Dated:   New York, New York
         February 21, 2013

                                          S/_____
                                             MIRIAM GOLDMAN CEDARBAUM
                                             United States District Judge

12